UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23306-CIV-SEITZ/DUBÉ

CARMEN M. SIEBLER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #14) and the Motion for Summary Judgment filed by the Defendant (D.E. #19) pursuant to an Order of Reference entered by the Honorable Patricia A. Seitz, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Carmen M. Siebler (hereinafter "Siebler" or "Plaintiff").

### I. FACTS

On May 16, 2006, Siebler filed applications for disability insurance benefits and supplemental security income. (R. 101-104, 105-109).[1] The applications were denied initially and on reconsideration. (R. 61-80). An initial hearing was held on August 21, 2007. (R. 23-60). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 9-22 ). A request for review filed with the Appeals Council was denied. (R. 1-4).

The Plaintiff, age 46 at the time of the hearing on August 21, 2007, testified that she

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

completed high school and graduated from a culinary arts school. (R. 28). Siebler also testified that she worked as a chef in Sweden and as a waitress in the United Stated. (R. 29).

The Plaintiff testified that prior to working at TGI Friday's, she took care of her father-in-law for 2-3 years because he had cancer. The Plaintiff stated she currently lives with her mother-in-law because she doesn't have someplace else to stay and she received a check in the amount of $228.00 per month from Miami-Dade County. (R. 30). According to Siebler, at the time she was taking care of her father-in-law, her husband was incarcerated. Her husband now lives with her although they are separated. Siebler stated she cannot concentrate or sleep, cries a lot and becomes very nervous. (R. 31-32).

Siebler said that thinking about her father-in-law, her current situation and the fact she can't work is what causes her to cry. The Plaintiff stated that because of depression caused by the death of her father-in-law and pain in her back she quit her job. (R. 31). She currently cannot work because she can't concentrate or sleep; is constantly worried about what will happen; and cannot be around people. Siebler further stated her brother-in-law also lives in the house with them and he is the one that helps out. (R. 32).

The Plaintiff testified that sometimes she will try to cook for her mother-in-law because she is handicapped. She added that sometimes she cannot cook because she will spend all day in bed. Sometimes she will spend three days at a time in bed. The Plaintiff also testified she doesn't watch television, sometimes reads the newspaper, and will cook maybe twice a week. (R. 33).

According to the Plaintiff, she sees Dr. Hernandez at Miami Behavioral and he prescribes her medications. She added that because she can only afford to buy one of her medications, Dr. Hernandez provides her with free samples of the additional medications. (R. 35). Siebler takes

Effexor which is an antidepressant and it helps with her depression and headaches. Dr. Hernandez wants her to start taking Effexor twice a day. (R. 36). When asked what she is currently worried about, the Plaintiff replied she is concerned with how she is going to take care of herself. When asked about her sleeping habits, Siebler responded as follows:

> Sometime, one night, I sleep for three hours. Another night, I don't sleep at all. Sometime, I sleep in daytime because I couldn't sleep at night. It's like changing. You know, it's not like specific.

(R. 37).

Siebler testified that she takes Clonazepam in order to help her sleep. The Plaintiff stated that sometimes the medication helps but when she has anxiety or panic attacks the medication will not help. Additionally, the Plaintiff stated she tires easily and gets shortness of breath. (R. 38). Siebler also said that she was told by doctors that she needs to eat healthier and watch her sugar because she is borderline diabetic. Siebler gets anxiety attacks when she goes out alone; is around too many people; or has to prepare for an interview. The Plaintiff also stated she tried to go on interviews, but no longer does as Dr. Hernandez told her she needs to get better before doing so. Siebler stated she has not been able to get through an interview from beginning to end. (R. 39-40).

The Plaintiff testified that she tried to go on interviews at places where she could work alone but she "couldn't even do that." Siebler stated that when she gets an anxiety attack, she gets shortness of breath, nervous and shaky. (R. 40). According to the Plaintiff, she leaves her house to visit Adela, her 83 year old neighbor, who she considers to be family. She added that her neighbor worries about whether the Plaintiff eats or showers because there are days where she doesn't feel like doing anything. (R. 41). Siebler testified that usually after 2-3 days of staying in bed her neighbor will realize that she hasn't gotten up and makes sure she gets up. Additionally, she stated that Adela

will make her coffee and cook for her. (R. 42).

Siebler stated that while taking care of her father-in-law she bathed him, changed him, cooked for him, fed him, and basically did everything for him which caused her to start drinking. She added that after he passed away everyone helped her mother-in-law and forgot about her, which caused her depression. The Plaintiff stated that she entered a program for 7 months and when she left got the job at TGI Fridays. (R. 42-43). After leaving the program she continued to drink for a short period, but ultimately stopped on her own. (R. 43-44).

Siebler testified that in the last couple of years her weight has fluctuated up and down. She further stated that when she stopped doing drugs she lost ten pounds because she was not eating, but once she was in the program she gained weight and has been trying to lose 10 pounds ever since. (R. 44). The Plaintiff stated she could cook steaks and make salads because it is easy and fast. She also said she can do a load of laundry but some days does not feel like putting it in the dryer. According to the Plaintiff, while working at TGI Friday's she was earning a "waitress's" minimum wage, plus tips. (R. 45). She further testified that in 2004 she worked 32 hours a week and did not pay taxes as she did not earn enough. (R. 45-46).

The Plaintiff stated that after 6 months of working at TGI Friday's, her hours began to decline. She added that the last 4-5 months she worked an open schedule because she could not handle the stress, rush or weight. She explained that she would come in and if someone didn't want to work their shift, she would cover for them. (R. 47). Siebler testified that in 2005 she made more money than in 2004 because she was rolling silverware and making $7.00 or $7.25 an hour. (R. 48). In 2004, she made more than what the earnings record indicated because in addition to the $3,300.00 reported, she received tips. (R. 49).

4

According to the Plaintiff, she knows how to drive but has never owned a car. She added that when she did drive she used her in-laws' car. Siebler stated her depression became worse because she stopped socializing with her friends to avoid putting herself in positions where she would be tempted to drink. She further stated that in addition to visiting with Adela, Adela's daughter will visit with her as well. (R. 52).

Siebler testified she lacks concentration; sometimes forgets things; and sometimes blacks out. She specifically stated that her memory problems are more related to momentary things. (R. 53). The Plaintiff stated sometimes hears voices like her mother or sister calling her and she sometimes sees things as well. (R. 54). Dr. Hernandez wants to see her on a monthly basis to help better control her hallucinations and delusions. (R. 55). According to the Plaintiff, when reading a newspaper article she will have to read the same line two-three times to understand what she is reading. (R. 56).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. A review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the severe impairment of depressive disorder. The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 14). The ALJ determined that the Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but added the following nonexertional limitations:

> ... the claimant is able to perform the basic mental demands of

> unskilled work as set forth in 20 CFR §§ 404.1568 and 416.968 and SSRs 83-10, 85-15 and 96-9p, i.e., understand, remember and carry out simple instructions, make simple work related decisions, respond appropriately to supervision, co-workers and usual work situations and deal with changes in a routine work setting.

(R. 15). The ALJ determined that the Plaintiff is unable to perform her past relevant work, but that based on the Plaintiff's age, education, work experience and residual functional capacity there are other jobs that exist in significant numbers in the national economy which the Plaintiff could perform as, and thus, not disabled within the meaning of the Social Security Act. (R. 21).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must

affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are

awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to set forth good cause to discredit the opinion of the Plaintiff's treating physician, Dr. Nelson Hernandez, and in failing to re-contact Dr. Hernandez to clarify his alleged inconsistent statements.

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984).

Dr. Hernandez completed a Treating Source Mental Health Report on July 19, 2006. (R. 196-197). Dr. Hernandez opined that the Plaintiff's mood was depressed and anxious, and her affect was unstable. He further found that the Plaintiff diminished thought and concentration and her memory was impaired. (R. 196). He concluded that the Plaintiff would be unable to work due to depression

8

and anxiety, but was able to manage her own funds. (R. 197). With regards to the report completed by Dr. Hernandez, the ALJ stated as follows:

> In a May 2006 mental health questionnaire Dr. Hernandez opined the claimant would be unable to work based on alleged symptoms of depression/anxiety, labile mood and affect, diminished thought productivity and fears, diminished concentration and impaired memory. I note that these reports were not reflected in his contemporaneous treatment notes above. In fact, the last mention of memory problems was in March 2006, as in his May 2006 mental status exam he checked the "unremarkable" memory box (see 6F/4 versus 11F/page 10, see also 4F). Diagnoses were depression and anxiety disorders with fair prognosis for recovery and treatment.

(R. 18).

Dr. Hernandez also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form on June 26, 2007. (R. 306-308). Dr. Hernandez found that the Plaintiff's ability to make occupational adjustments in all areas except functioning independently were "poor or none" and "fair" in her ability to function independently. (R. 306). He further opined that the Plaintiff's ability to understand, remember and carry out complex job instructions, and detailed but not complex job instructions was "poor or none;" and her ability to understand, remember and carry out simple job instructions was "fair." The assessment stated that the Plaintiff's ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability were "poor or none;" and her ability to maintain personal appearance was "fair." (R. 307).

The ALJ rejected the June 2007 assessment and stated as follows:

> I carefully reviewed the June 2007 assessment, compared it to the overall treatment record detailed above and reject this assessment. Dr. Hernandez indicated the claimant retained poor ability to make most occupation adjustments. However, his treatment notes consistently reflected the claimant's cooperative attitude and fair insight, judgment and reliability, except for the initial psychiatric

>    interview in December 2005 (see 11F/23 versus 6F and 11F in general). Dr. Hernandez rated as poor the claimant's ability to make performance adjustments, such as her ability to understand, remember and carry out complex and detailed but not complex job instructions (see 14F/3). He also rated as fair her ability to understand, remember and carry out simple job instructions. However, his mental status findings always reflected unremarkable motor behavior, thought processes and thought content findings (see 11F and 6F in general).
>
>    Further, Dr. Hernandez's findings of fair ability to maintain her personal appearance, fairly contradict his own findings that the claimant presented disheveled at times, versus his own findings of appropriate appearance documented in 11F. Dr. Hernandez always noted the claimant's cooperative attitude, which is inconsistent with his poor rating of the claimant's inability to behave in an emotionally stable manner or to relate predictably in social situations. In fact, the claimant herself admitted she lived with her mother in law and her ex-husband and although she allegedly did not get along with her ex-mother in law, her living arrangements strongly suggest her reports are likely exaggerated. The claimant's living arrangements also belie Dr. Hernandez's assessment that the claimant could not behave in an emotionally stable manner or relate predictably in social situations. Despite her assertions of a difficult relationship with her mother in law, the claimant still lives with her mother in law and with her ex-husband. Taking her words as true, this suggests the claimant is able to handle stressful social situations on a continued basis, which in turn indicates she would be able to handle normal work stress. Further, the claimant has an older friend with which she gets along. All these facts are inconsistent with Dr. Hernandez's poor ratings in these areas, likely because she did not share this with him. In addition, despite Dr. Hernandez's findings that the claimant had poor ability to demonstrate reliability, his medication management notes consistently indicated the claimant retained fair reliability. Based on all of the above, I accord Dr. Hernandez's assessment little weight as conclusory and inconsistent with his own treatment notes.

(R. 20-21). A review of the record reveals that the ALJ's analysis was correct. Specifically, on July 19, 2006, Dr. Hernandez stated the Plaintiff's prognosis was "fair." (R. 197). During multiple treatment visits, Dr. Hernandez found the Plaintiff maintained a cooperative attitude and displayed "fair" insight, judgment and reliability; and her motor behavior, memory, thought process, and

thought contents were unremarkable. (R. 204-206, 256, 258-261). The ALJ reviewed the record in its entirety including the treatment records of Dr. Hernandez, the medical assessments provided by Dr. Hernandez and the Plaintiff's testimony, and concluded that the opinions of Dr. Hernandez were entitle to little weight.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

In the instant matter, the ALJ's decision to assign little weight to the opinion of Dr. Hernandez was supported by substantial evidence as Dr. Hernandez's opinion was conclusory and inconsistent with his own treatment notes. This Court finds that the ALJ clearly articulated her reasons for giving Dr. Hernandez's assessment little weight.

The Plaintiff's second point of contention is that the ALJ erred in not finding that the Plaintiff met or equaled a medical listing at step three of the sequential evaluation.

The Eleventh Circuit reviewed listing impairments and stated as follows:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.

11

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

Wilson v. Barnhart, 284 F. 3d 1219, 1224 (11th Cir. 2002)(footnotes omitted). Additionally, while the ALJ must consider whether a claimant meets a listing, the ALJ need not mechanically recite that a claimant does not meet a listing in his decision, as this fact may be implied from the record. Hutchinson v. Bowen, 787 F. 2d 1461, 1463 (11th Cir. 1986).

The Plaintiff specifically contends that the ALJ should have determined that the Plaintiff met or equaled Listing 12.04. The Listing requirements of 12.04 A and B are set forth as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
>> 1. Depressive syndrome characterized by at least four of the following:
>>
>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>>
>> b. Appetite disturbance with change in weight; or
>>
>> c. Sleep disturbance; or
>>
>> d. Psychomotor agitation or retardation; or
>>
>> e. Decreased energy; or
>>
>> f. Feelings of guilt or worthlessness; or

    g. Difficulty concentrating or thinking; or

    h. Thoughts of suicide; or

    I. Hallucinations, delusions or paranoid thinking; or

    2. Manic syndrome characterized by at least three of the following:

    a. Hyperactivity; or

    b. Pressure of speech; or

    c. Flight of ideas; or

    d. Inflated self-esteem; or

    e. Decreased need for sleep; or

    f. Easy distractibility; or

    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

    h. Hallucinations, delusions or paranoid thinking;

**Or**

    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

**And**

    B. Resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or

        2. Marked difficulties in maintaining social functioning; or

        3. Marked difficulties in maintaining concentration, persistence, or pace; or

        4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. § Pt. 404, Subpt. P, App. 1 §12.04A and B.

    The ALJ specifically analyzed listing 12.04 and the four areas of daily living, social functioning, ability to maintain concentration, persistence or pace, and repeated episodes of decompensation of extended duration. The ALJ determined that in activities of daily living the

Plaintiff had mild restrictions and based this finding on the fact that the Plaintiff lives with family; is able to attend to her own daily self care needs; can prepare meals; do laundry; clean her room; care for her dogs; and shop for basic needs. In the area of social functioning the ALJ determined that the Plaintiff had mild difficulties and based this finding on the Plaintiff playing with her dogs, and her relationship with her neighbor. With regard to concentration, persistence or pace, the ALJ found as follows:

> The claimant reports she has difficulty paying attention as she gets distracted. However, she is able to complete serial subtractions, has adequate and goal-directed speech flow and is able to follow and retain both written and spoken instructions.

(R. 15). Next, the ALJ determined Siebler did not experience any episodes of decompensation. Accordingly, the ALJ determined that the Plaintiff did not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, and therefore, the B criteria was not satisfied. (R. 15).

The Plaintiff's argument regarding the Listing criteria are centered on the opinions of Dr. Hernandez. However, as noted above, the medical record does not support the degree of limitation placed on the Plaintiff by Dr. Hernandez.

It is the opinion of this Court that the ALJ properly considered the Plaintiff's alleged mental impairments. As such, this Court finds no basis for reversal as to the Plaintiff's second argument. Accordingly, it is the recommendation of this Court that the decision of the ALJ as to the Plaintiff's second argument is based on substantial evidence and should be affirmed.

The Plaintiff's final point of contention is that the ALJ erred in failing to solicit the testimony

of a Vocational Expert at step 5.

Testimony from a vocational expert is highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants. Holley v. Chater, 931 F. Supp. 840, 851, (S.D. Fla. 1996). Further, the ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. Foote v. Chater, 67 F. 3d 1553, 1558 (11th Cir. 1995), citing Allen v. Sullivan, 880 F. 2d 1200, 1201 (11th Cir. 1989). However, first, the claimant bears the initial burden of proving that she is unable to perform her previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

Further, the use of the grids is appropriate under step 5 unless the claimant is unable to perform a full range of work at the given residual functional level or if the claimant has non-exertional impairments that significantly limit basic work skills. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). "Significantly limit basic work skills" has been interpreted as limitations which would prohibit the person from performing a "wide range" of work at the given work level. Id. at 1243. If the ALJ makes a determination that the nonexertional limitations do not significantly limit basic work skills, the ALJ may properly rely on the grids to determine if the claimant is disabled. Id. However, this requires a specific finding by the ALJ. Id. at 1244, quoting, Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant matter, the ALJ properly determined that the Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels. (R. 15). The ALJ then

determined that Siebler had nonexertional limitations which did not significantly limit basic work skills, and stated as follows:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or not effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. Under 204.00, the residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well and represents substantial work capability for jobs in the national economy at all skill and physical demands levels. Although the claimant is able to perform unskilled work only, she retains the ability to understand, remember and carry out simple work instructions, make simple work related decisions, respond appropriately to supervision, co-workers and usual work situations and to deal with changes in a routine work setting. Pursuant to SSRs 83-10, 85-15 and 96-6p, these limitations have only slight effect on the exertional occupational base for heavy, medium, light and even sedentary exertional work.

(R. 22). As the ALJ properly assigned little weight to the opinion of Dr. Hernandez and properly determined the Plaintiff's RFC, the nonexertional limitations placed on the Plaintiff by the ALJ did not significantly reduce the occupational base, and thus, did not require the use of a vocational expert. It is therefore, the opinion of this Court that the ALJ's decision was supported by substantial evidence of the record and should be affirmed.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #14) should be **DENIED** and the Motion

for Summary Judgment filed by the Defendant (D.E. #19) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this _21_ day of September, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE